SPENCER v. STATE.

Opinion delivered April 30, 1917.

1.  FORGERY—VARIANCE BETWEEN INDICTMENT AND PROOF.—Immaterial variances resulting from clerical inaccuracies in transcribing and spelling the forged name are not fatal.

2.  ACCOMPLICE—DEFINITION.—An accomplice is one who in any manner participates in the criminality of an act, whether he is considered, in strict legal propriety, as principal, or merely as an accessory before or after the fact.

3.  APPEAL AND ERROR—ACCOMPLICE—FAILURE TO PROPERLY INSTRUCT.—In a criminal prosecution for forgery, it was material whether a certain witness was an accomplice; held, it was error for the court to refuse to instruct the jury on the issue of what constituted an accomplice, defendant having requested the court to instruct the jury as set out in 2 above.

Appeal from Faulkner Circuit Court; *Thomas C. Trimble,* Judge; reversed.

*Robins & Clark,* for appellant.

1.  The verdict is contrary to the law and the evidence. Herbert Spencer testified and was not corroborated by any one. Evidence by an accomplice must be corroborated. 75 Ark. 540; 58 *Id.* 310; *Ib.* 353; 36 *Id.* 117; 120 *Id.* 128. See, also, 63 Ark. 310; 120 *Id.* 148.

2.  An accomplice is one who in any manner participated in the criminal act. Wharton Cr. Law., § 982, A; 36 Ark. 126; Am. & Eng. Enc. Law (2 ed.), 390; 27 Ill. 152; 95 Am. Dec. 474.

3.  The court erred in refusing to give instruction No. 2, defining an accomplice. Russell on Crimes, p. 26; Wharton Cr. Law, § 982-A; 36 Ark. 126; 45 *Id.* 547; 43 *Id.* 368; 50 *Id.* 544; 51 *Id.* 118; 95 *Id.* 236; 37 *Id.* 67; 26 S. W. 829.

4.  It was error to refuse Nos. 1 and 3, asked by defendant. 63 Ark. 457, and cases *supra.*

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.  Instruction No. 1 was properly refused. 32 Ark. 203; 84 *Id.* 97; 100 *Id.* 184; 109 *Id.* 446.

2. The second merely defined an accomplice. There was no necessity for it, nor was there any evidence that Herbert Spencer was an accomplice in forging the check. Uttering a forged check and forgery are separate and distinct offenses. 1 Wharton Cr. Law (10 ed.), § 712; 48 Ark. 94; 116 Mo. 548; 87 Ky. 201; 67 Mich. 222; 59 Iowa 391; 31 Tex. Cr. 587; 71 Ark. 82. If the crimes are separate and distinct offenses, the persons are not accomplices. 73 Minn. 150; 102 Ga. 447; 152 Mo. 100; 75 Tenn. 124; 37 S. W. 423; 134 Cal. 301; Hughes Instructions to Juries, § 301.

3. The third was properly refused. 43 Ark. 367; 51 *Id.* 115.

4. The evidence is ample to support the verdict.

HART, J. C. H. Spencer prosecutes this appeal to reverse a judgment of conviction against him for the crime of forgery. The indictment charges him with having forged the name of Lee Mode to a check for $75 on the Farmers State Bank of Conway in favor of F. W. Morris.

Henderson Spencer testified that on the 2d day of March, 1916, C. H. Spencer gave him the check in question at Damascus, Faulkner County, Arkansas, and asked him to present the check to the bank at Conway in Faulkner County and return him the money; that he put the check in his pocket and went to town with his father and presented the check for payment; that he did not tell his father about having the check because he thought the check was all right; that he presented the check in payment, and the cashier of the bank refused to cash it and kept the check.

The assistant cashier of the bank testified that the $75 check in evidence was presented at the bank for payment by Henderson Spencer, and that he discovered that the signature to the check was not that of Lee Mode, and refused to pay it; that Henderson Spencer told witness his name was F. W. Morris, that he had sold Lee Mode $75 worth of cattle and the check was for the cattle.

Both the assistant cashier and the cashier of the bank testified that they had compared the check introduced in evidence which the defendant is charged with forging with another check which it is shown that the defendant signed and that in their opinion both the checks were written by the same man; that the defendant had done business with the Farmers State Bank, and that they were familiar with his signature. The check which it is shown that the defendant signed was on the Farmers State Bank, and was payable to Lee Mode and the witnesses pointed out the peculiar way in which the name Mode appears in each check; that the final "e" looked more like an "a" than it did an "e;" that the same person wrote the name of Lee Mode in both checks.

Lee Mode testified that he did not sign the check which the defendant is charged with having forged; that he never bought any cattle from C. H. Spencer or Henderson Spencer, and never gave the defendant a check for $75.

The defendant was shown the $75 check which he is charged with forging and stated that he had never seen it until it was handed to him at the trial. He testified that he did not give that check or any other check to Henderson Spencer and ask him to take it to the bank and cash it for him. He was shown the check which he admitted that he signed and stated that he wrote the name Lee Mode in the check; that the check was payable to Lee Mode. He stated that his custom in writing "e" at the end of a word was to make it a capital.

The evidence was sufficient to support the verdict, and no reversal of the judgment is sought on account of the insufficiency of the evidence. Neither were any exceptions saved to the instructions given by the court. The judgment is sought to be reversed because the court refused to give instructions asked by the defendant. The instructions read as follows:

"1. The court instructs the jury, if you find that the descriptive part of the indictment charges that the

check alleged to be forged was signed Lee Mode, then you are instructed that this constitutes a fatal variance, and you must acquit the defendant.''

''2.   The court instructs the jury that an accomplice is one who in any manner participates in the criminality of an act, whether he is considered, in strict legal propriety, as principal, or merely as an accessory before or after the fact.''

''3.   The court instructs the jury that the witness Henderson Spencer, is an accomplice under the evidence in this case, and you are further instructed that a conviction can not be had upon his testimony unless the same is corroborated by other evidence, which of itself, and without aid of the testimony of the accomplice, tends to connect the defendant with the crime of forgery, and the corroboration is not sufficient if it merely shows the commission of the offense and the circumstances thereof.''

There was no error in refusing instruction No. 1. Mr. Wharton, in discussing the difference between a material and immaterial variance, says, ''The greater rigor of the old English law in this respect was one of the consequences of the barbarous severity of the punishment imposed.   A more humane system of punishment was followed by a more rational system of pleading.''   Wharton's Criminal Pleading and Practice (8 ed.), secs. 173 and 273.

(1)   Following the rule there laid down in *State* v. *Duffield* (W. Va.), 38 S. E. 577, it was held that immaterial variances resulting from clerical inaccuracies in transcribing and misspelling, even of the name forged, are no longer necessarily fatal.   To the same effect see *State* v. *Gryder* (La.), 32 Am. St. Rept. 358.   So, too, Mr. Underhill recognizes that the trend of modern decisions is to permit a wider latitude in the proof and disregard unimportant discrepancies in names and dates, particularly if the names are *idem sonans*.   Underhill on Criminal Evidence (2 ed.), § 421.

In *Joiner* v. *State*, 113 Ark. 112, the indictment charged that defendant stole property belonging to one

J. R. Reynolds. The proof showed his name to be J. B. Reynolds. It was held that there was no variance between the indictment and proof, if the jury believed beyond a reasonable doubt that the prosecuting witness, J. B. Reynolds, was the identical person named in the indictment as J. R. Reynolds. See, also, *Woods* v. *State,* 123 Ark. 111; and *Bridger* v. *State,* 122 Ark. 391.

In the instant case the proof shows that a man by the name of Lee Mode resided in the neighborhood; that his check at the bank was good, and that the defendant knew him. It was also shown that the final ''e'' in a word as written by the defendant, resembles the letter ''a.'' The defendant himself admitted that he always made the final ''e'' in a word a capital letter, and this fact would account for the resemblance to the letter ''a'' if the letter ''e'' should be misshaped. Under these circumstances, we think the court correctly refused to instruct the jury as a matter of law, that there was a fatal variance between the indictment and the proof.

(2-3) We think the court erred in refusing to give instruction No. 2. The instruction as asked contains the definition of an accomplice as laid down in *Polk* v. *State,* 36 Ark. 117. No other instruction defining an accomplice was given by the court. It is true the court submitted to the jury the question of whether or not Henderson Spencer was an accomplice, and told it that if it found he was an accomplice, a conviction could not be had upon his testimony unless corroborated by other evidence, etc. But the defendant was entitled to have the jury told what constituted an accomplice. Without this word being defined, the jury might have thought that Henderson Spencer was a joint offender with the defendant, and that a joint offender was not an accomplice. They might have convicted upon his testimony alone. Under the facts as presented by the record the jury might have found that Henderson Spencer at the time of passing the check knew the same to have been forged and might have found that he was guilty of forgery, if he had been on trial for that offense,

though the forgery was not his handiwork. *Moulton* v.
*State,* 105 Ark. 502. Hence they might have believed him
to have been a joint offender with the defendant. Of
course, it might have found that he was an accomplice, and
arrived at its verdict from a consideration of his evidence,
together with the corroborating evidence. We can not
tell, however, from the record whether the jury arrived at
its verdict by considering the evidence in connection with
the proper definition of the word accomplice. Hence it
was prejudicial error to refuse the instruction because
no other instruction defining the word ''accomplice'' was
given to the jury.

The court did not err in refusing to give instruction
No. 3. Under the facts as presented in the record, it was
a question of fact whether Henderson Spencer was an
accomplice or not, and it was not error to refuse an in-
struction which assumed that he was an accomplice.
*Simms* v. *State,* 105 Ark. 16.

For the error in refusing to give instruction No. 2,
the judgment will be reversed and the cause remanded
for a new trial.